IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD FISCHER, DOROTHY FISCHER, )
DARREN FISCHER, and DANIEL        )       2:10-cv-1693-GEB-EFB
FISCHER,                          )
                                  )
              Plaintiff,          )       ORDER GRANTING AND DENYING IN
                                  )       PART DEFENDANTS' MOTION TO
         v.                       )       DISMISS[*]
                                  )
AVIVA LIFE AND ANNUITY COMPANY,   )
INDIANAPOLIS LIFE INSURANCE       )
COMPANY, LEGACY MARKETING GROUP,
INC. d/b/a LEGACY MARKETING
INSURANCE SERVICES, DOES 1-100,

              Defendant.
_____

         Defendants Aviva Life and Annuity Company ("Aviva") and

Indianapolis Life Insurance Company ("Indianapolis")(collectively,

"Movants") request dismissal of five of Plaintiffs' six claims without

leave to amend under Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)"), arguing Plaintiffs have failed to state a cognizable claim

for relief. For the reasons stated below, the motion is granted and

denied in part.

                          **I. LEGAL STANDARD**

         A Rule 12(b)(6) dismissal motion tests the legal sufficiency

of the claims alleged in the complaint. Novarro v. Black, 250 F.3d

729, 732 (9th Cir. 2001). A pleading must contain "a short and plain

---

[*]     This matter is deemed suitable for decision without oral
argument.  E.D. Cal. R. 230(g).

1

statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which relief rests . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Dismissal of a claim under Rule 12(b)(6) is appropriate only where the complaint either 1) lacks a cognizable legal theory, or 2) lacks factual allegations sufficient to support a cognizable legal theory. <u>Balistreri v. Pacific Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). To avoid dismissal, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 547.

In deciding a Rule 12(b)(6) motion, the material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. <u>See</u> <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009). However, conclusory statements and legal conclusions are not entitled to a presumption of truth. <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009); <u>Twombly</u>, 550 U.S. at 555. "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion is granted, the "district court should grant leave to amend . . . , unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000)(quoting <u>Doe v. U.S.</u>, 58 F.3d 484, 497 (9th Cir. 1995)).

1                  **II. FACTUAL ALLEGATIONS AND PLAINTIFFS' CLAIMS**

2            Plaintiffs Donald Fischer, Dorothy Fischer, Darren Fischer,

3 and Daniel Fischer  (collectively, "Plaintiffs") allege Defendants

4 Aviva, Indianapolis, and Legacy Marketing Group, Inc. d/b/a Legacy

5 Marketing Insurance Services ("Legacy")(collectively, "Defendants")

6 terminated Plaintiffs' life insurance policies and failed to offer

7 replacement policies that were comparable to the original ones.

8 (Def.'s Mot. Dismiss ("Mot.") 1:3-8.) Movants contend that five of

9 Plaintiffs' six claims fail to state a legally sustainable claim and

10 should be dismissed.[1] (Id. 1:9-10.)

11            Plaintiffs each obtained a Flexible Premium Adjustable Life

12 Insurance policy from Indianapolis in 2001 (collectively, the

13 "Policies"). (Compl. ¶¶ 12-16.) The Policies were rolled over from

14 previous Prudential Life Insurance Company policies. (Id. ¶¶ 12-15.)

15 The Policies were marketed as having the flexibility for the

16 policyholder to determine later whether to cash out the policy or

17 retain the death benefit of the policy. (Id. ¶ 16.) Each of the

18 Policies contained the following provision:

19          Conversion Privilege

20          Within 31 days after coverage ceases because of
termination of employment or of membership in any
21          class eligible for coverage under this
Certificate, the Owner may convert the benefits
22          described in the Certificate by submitting to the
Company a written request to such effect, together
23          with this Certificate. The policy which the Owner
will receive in such conversion may be any policy
24          or rider issued by the Company at the time of such
conversion which is comparable to this
25          Certificate. The company will not issue a policy
or rider which has a provision which puts the
26          Company at any greater risk than a similar

27

28      [1]Plaintiffs' first claim is for breach of contract; Movants do not
seek to dismiss this claim. (Compl. ¶¶ 50-57.)

provision in the converted Certificate. In
connection with a conversion, evidence of
insurability will not be required.

Further, if the group master policy terminates or
is amended so as to terminate the insurance of any
class of insured persons, every person insured
thereunder at the date of such termination whose
insurance terminates, shall be entitled to have
issued by the Company an individual policy of life
insurance, subject to the same conditions and
limitations shown above.

(<u>Id.</u> ¶ 19.)

In a letter dated March 15, 2007, Aviva advised Plaintiffs
that Indianapolis had been acquired by Aviva. (<u>Id.</u> ¶ 17.) Plaintiffs
were informed that there would be no changes to their life insurance
policy. (<u>Id.</u>) In or around June 2008, Aviva terminated Plaintiffs'
policies and offered comparable policies. (<u>Id.</u> ¶ 18.) Plaintiffs
allege that Defendants offered substitute policies that were not
comparable to their original ones and that Aviva's representation that
they were comparable was materially false. (<u>Id.</u> ¶¶ 11, 21-24.) In
particular, Plaintiffs state the substitute policies were riskier, had
a lower guaranteed rate of return, and required substantially higher
premiums. (<u>Id.</u> ¶¶ 21-24.) Accordingly, Plaintiffs declined to accept
the replacement life insurance policy offers.  (<u>Id.</u> ¶¶ 27-32.)
Plaintiffs cashed out their policies and received less than their
original investment in each policy. (<u>Id.</u>)

### III. DISCUSSION

### 1.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Movants seek dismissal of Plaintiffs' second claim in which
Plaintiffs allege a breach of the implied covenant of good faith and
fair dealing. (Compl. ¶¶ 58-63.) Movants argue to state a claim for
the breach of the implied covenant of good faith and fair dealing a
plaintiff must allege benefits due under the policy were withheld and

4

the reason for withholding the benefits was unreasonable or without proper cause. (Mot. 3:28-4:2.) Movants argue that Plaintiffs cannot state a claim for breach of the implied covenant because Defendants have not denied them any benefits due under the Policies. (Id. 5:11-12.)  Further the Movants argue that Plaintiffs have not pled a legally sufficient claim since the reason for termination is neither improper nor disputed. (Def.'s Reply ("Reply") 2:12-15.)  Plaintiffs argue their claim is premised upon Defendants' termination of the Policies, which was an unfair interference with Plaintiffs' right to receive the benefits promised under their life insurance policies. (Pls.' Opp'n Mot. Dismiss ("Opp'n") 4:13-15.)

     "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Foley v. Interactive Data Corp., 47 Cal.3d 654, 683 (1988). Under California law, tort damages for breach of the implied covenant of good faith and fair dealing are generally not available. Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal.4th 917, 923 (2004).  This is because "the covenant is a contract term" and "compensation for its breach has almost always been limited to contract rather than tort remedies." Id. at 937. However, "when the breach occurs in the context of an insurance company's failure to properly settle a claim against an insured, or to resolve a claim asserted by the insured" the breach could give rise to a tort claim. Id. at 923, 937-38.

     The California Supreme Court has not ruled on whether cancellation provisions are actionable as a breach of the implied covenant. Id. at 941.

          In interpreting state law, federal courts are bound by the pronouncements of the state's highest court. If the particular issue has not been decided, federal courts

5

must predict how the state's highest court would resolve it.  In making that prediction, federal courts look to existing state law without predicting potential changes in that law.

<u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1203 (9th Cir. 2002)(citations omitted). "However, in the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts."  <u>In re Kirkland</u>, 915 F.2d 1236, 1239 (9th Cir. 1990)(quotations and citations omitted). Two California Courts of Appeal have decided the issue holding: "[c]ancellation provisions in an insurance contract are subject to the implied covenant of good faith and fair dealing just like any other clause." <u>Helfand v. Nat'l Union Fire Ins. Co.</u>, 10 Cal.App.4th 869, 903 (1992)(citing <u>Spindle v. Travelers Ins. Cos.</u>, 66 Cal.App.3d 951, 958 (1977)).  This reasoning is persuasive and adopted.

"[T]o establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." <u>Guebara v. Allstate Ins. Co.</u>, 237 F.3d 987, 992 (9th Cir. 2001) (citing <u>Love v. Fire Ins. Exch.</u>, 221 Cal.App.3d 1136, 1151 (1990)). Plaintiffs allege Defendants wrongfully retained money they were obligated to pay Plaintiffs when they avoided their obligation to provide Plaintiffs with substitute life insurance policies as promised and retained money they were obligated to pay Plaintiffs.

Plaintiffs' factual allegations are sufficient to support Plaintiffs' theory that Defendants breached the implied covenant of good faith and fair dealing by violating the cancellation provision in

the insurance contract. Therefore, this portion of the motion is denied.

**2.   Unfair Business Practices**

Movants also seek dismissal of Plaintiffs' third claim in which Plaintiffs allege Defendants violated California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 et seq. (Compl. ¶¶ 65-66.)  Movants argue this claim is legally defective because Plaintiffs allege no basis for restitution or injunctive relief, the only forms of relief available under the statute. (Mot. 5:24-26.) Specifically, the Movants argue Plaintiffs have failed to request restitution or identify any money paid to Defendants that must be returned to them, and have instead sought damages and disgorgement. (Id. 5:27-6:17.)  Plaintiffs counter the Complaint does allege a basis for restitution by stating that the Court must determine "[w]hether Defendants wrongfully retained money they were otherwise obliged to pay to Plaintiffs." (Opp'n 6:6-8.) Plaintiffs also argue they requested an order providing for equitable and injunctive relief. (Id. 6:9-26.)

"[A]n action based on [Section 17200] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." Farmers Ins. Exchange v. Superior Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted). "A UCL action is equitable in nature; damages cannot be recovered . . . . [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" In re Tobacco II Cases, 46 Cal.4th 298, 312 (2009)(internal citations omitted). "The Court may make such orders or

judgments . . . which may be necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful." Cal. Bus. & Prof. Code § 17535.

Plaintiffs allege in their Complaint that an issue to be decided is "[w]hether Defendants wrongfully retained money they were otherwise obliged to pay to Plaintiffs." (Compl. 10:5-6.) Further, Plaintiffs allege they are "entitled to the recovery, refund, restitution, and disgorgement by Defendants of all earnings, profits, compensation, and other benefits obtained by Defendants as a result of their unfair business practices." (Id. 17:5-7.) Plaintiffs seek to have the Defendants "enjoined from terminating existing life insurance policies without providing substitute policies of comparable value and refund all premiums, surrender charges, and other costs illegally taxed to Plaintiffs." (Id. 16:4-6.) Plaintiffs also seek a "temporary, preliminary and/or permanent order providing for equitable and injunctive relief." (Id. 16:6-7.)

Plaintiffs' equitable relief allegations are sufficient state a cognizable claim under the UCL; therefore, the motion to dismiss this claim is denied.

**3.   Unjust Enrichment**

Movants also seek dismissal of Plaintiffs' fourth claim in which Plaintiffs' allege unjust enrichment, arguing because the parties are alleged to have an express agreement or contract this is not a viable claim. (Id. 7:15-16.) Plaintiffs counter that they received benefits disproportionate to Defendants' premiums and charges under the life insurance policies that Defendants terminated, and therefore they have stated a viable unjust enrichment claim. (Opp'n

7:25-28.)  Movants rejoin Plaintiffs' position is not supported by any authority. (Reply 5:17-6:2.)

"[T]here is no cause of action in California for unjust enrichment." <u>Melchior v. New Line Productions, Inc.</u>, 106 Cal.App.4th 779, 793 (2003). "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." <u>Id.</u> The essence of Plaintiffs' unjust enrichment claim is a quasi-contractual action seeking money from Defendants that Plaintiffs paid to Defendants without receiving anything of value in return. (Compl. ¶¶ 70-73.) "However, as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." <u>Cal. Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Cal. Inc.</u>, 94 Cal.App.4th 151, 172 (2001).

Since Plaintiffs have not shown that they have a viable unjust enrichment claim, this claim is dismissed with prejudice because an amendment "could not possibly cure the deficiency" in this claim. <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

**4.   Financial Elder Abuse**

Further, Movants seek dismissal of Plaintiffs' fifth claim in which Plaintiffs allege financial elder abuse, premised on a breach of California Welfare and Institutions Code sections 15600-15675. (Compl. ¶¶ 76-81.) Financial elder abuse occurs when a person or entity "[t]akes, secretes, appropriates, or retains real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1).

A person or entity is "deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." Cal. Welf. & Inst. Code § 15610.30(b).

Movants argue they did not take, secrete, appropriate or retain Plaintiffs' property for a wrongful use or with an intent to defraud. (Mot. 8:15-17.) Plaintiffs counter that they have alleged in their Complaint that Defendants' bad-faith termination of the Policies allowed the Defendants to retain the economic benefits of seven years of premiums, charges, and costs paid under the policies. (Opp'n 8:26-9:1.)  Plaintiffs also argue that their financial interest in the Policies is personal property and the Defendants acted wrongfully and deceptively in terminating those policies. (Id. 9:7-10.)  Plaintiffs have alleged that Aviva falsely informed the Plaintiffs that there would be no change in the Policies and continued to collect fees for a year before terminating the Policies and failing to offer comparable policies. (Compl. ¶¶ 17-25.)

Movants reply that Plaintiffs have not disputed that the premiums paid for seven years were appropriate, that those premiums were never put to a wrongful use, that the original policies were not unsuitable, that the benefits would have been paid had a triggering event occurred, or that Plaintiffs themselves surrendered their policies and cashed out. (Reply 6:21-26.) Movants argue that without challenging those facts, Plaintiffs cannot establish that Defendants ever took, secreted, or appropriated Plaintiffs' property with wrongful intent because all the money paid to the Defendants was for the original policies. (Id. 7:4-7.)

1    Plaintiffs allegations are sufficient to withstand the

2    motion; therefore the motion is denied.

3    **5.   Breach of Fiduciary Duty**

4    Movants also seek dismissal of Plaintiffs' sixth claim in

5    which a breach of a fiduciary duty is alleged.  (Compl. ¶¶ 82-86.)

6    Movants argue since an insurer owes its insureds no fiduciary duty as

7    a matter of law, Plaintiffs can state no breach of fiduciary duty

8    claim against Aviva or Indianapolis. (Mot. 9:11-13.) Plaintiffs rejoin

9    that two allegations in their Complaint allege that Defendants invited

10   them to rely upon the Defendants as fiduciaries. (Opp'n 9:23-28.)

11   Specifically, Plaintiffs allege that Defendants falsely assured them

12   that Aviva's acquisition of Indianapolis would not result in any

13   change to their insurance and that Aviva was offering comparable

14   policies. (Id.)  Plaintiffs also allege in their Complaint that their

15   policies had investment value and that "Defendants, acting in their

16   positions as investment advisors and providers of insurance-related

17   investment products, owed Plaintiffs a fiduciary duty by virtue of the

18   special trust placed in them by Plaintiffs." (Compl. ¶ 83.)

19   Plaintiffs further allege that Defendants breached this duty by

20   failing to abide by their promise of "offer[ing] policies of

21   comparable value." (Id. ¶ 84.) Movants rejoin that "Plaintiffs'

22   allegations merely concern their life insurance policies; they nowhere

23   allege Aviva or Indianapolis provided financial planning advice or

24   sold them investment products." (Reply 8:14-16.)

25   Under California law,

26   [t]he insurer-insured relationship . . . is not a true
     "fiduciary relationship" in the same sense as the
27   relationship between trustee and beneficiary, or
     attorney and client. It is, rather, a relationship
28   often characterized by unequal bargaining power.  This
     characteristic has led the courts to impose "special

and heightened" duties, but while these "special" duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, not because the insurer is a fiduciary.

<u>Vu v. Prudential Prop. & Cas. Ins. Co.</u>, 26 Cal.4th 1142, 1150-51 (2001)(quotations and citations omitted).

    To establish a claim for breach of fiduciary duty the plaintiff must allege a special relationship, fiduciary in nature, that would "provide a basis for finding a fiduciary-like duty in that 'the insured must depend on the good faith and performance of the insurer.'" <u>In re Nat'l W. Life Ins. Deferred Annuities Litig.</u>, 467 F.Supp.2d 1071, 1087 (S.D.Cal. 2006).  Here, in light of Plaintiffs' allegations in their Complaint that Defendants acted as investment advisors for the Plaintiffs, Plaintiffs' allegations are sufficient to support Plaintiffs' breach of fiduciary duty claim. Therefore, this portion of the motion is denied.

### IV. Conclusion

    For the stated reasons, Movants' motion is granted and denied in part.

Dated:  September 10, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge

12